

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

UNITED STATES OF AMERICA,             §
                                      §
vs.                                   §    CRIMINAL ACTION NO.: 3:21-660-MGL
                                      §
DEMETREUS ALEXA LEWIS,                §
                         Defendant.   §
                                      §

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

## I.    INTRODUCTION

Pending before the Court is Defendant Demetreus Alexa Lewis's (Lewis) motion to suppress. Lewis asks the Court to suppress evidence seized during a vehicle search incident to his arrest. Having carefully considered the motion, the response, the oral argument, the record, and the applicable law, it is the judgment of the Court Lewis's motion will be denied.

## II.   FACTUAL AND PROCEDURAL HISTORY

The evidence in this case indicates that in the early morning on January 15, 2021, Lewis was allegedly involved with a domestic violence incident with his girlfriend (the Alleged Victim) at a nightclub in Richland County, South Carolina, during which he fired a gun, striking at least one person. Richland County Sheriff's Department (RCSD) thereafter secured an arrest warrant for Lewis.

Officers with the Sumter City Police Department (SCPD) became aware of the incident and obtained information that Lewis was traveling in a car with the Alleged Victim and a driver and headed toward an address in Sumter, South Carolina.  SCPD officers were in contact with RCSD, so learned of the existence of the warrant, which they also verified on the National Crime Information Center (NCIC) database.  SCPD officers never saw nor possessed the warrant.  SCPD officers also received a call, purportedly from one of the Alleged Victim's female family members, indicating that the group was in a red sedan headed to a home where Alleged Victim's children were staying.

The female family member also evidently called SCPD Detective Sergeant Buford Wilson's (Wilson) cell phone directly and used his first name when speaking on the phone with him.  Wilson testified he knows the Alleged Victim's father.  He fails to remember, however, which family member he spoke to.  The caller told Wilson what path the red car, purportedly containing Lewis, was taking.  SCPD officers failed to verify the vehicle's path; instead, they went to the expected destination.

The first officers on the scene were SCPD Lieutenant Joseph Lane (Lane) and SCPD Detective Staff Sergeant Robert Skinner (Skinner).  They were wearing vests equipped with body worn cameras (BWCs), but they failed to activate them during the incident.  Wilson and three uniformed patrol officers arrived, purportedly only seconds later.  Wilson also failed to activate his BWC, but the uniformed patrol officers did.

When the red car pulled into the driveway of the home where the Alleged Victim's children were staying, SCPD officers saw there were three occupants.  They reported the car was a Ford Focus, although it was in fact a Mercury Milan.

2

The officers surrounded the red car with their guns drawn and ordered Lewis and the driver out of the car.  Both Lewis and the driver were placed in handcuffs.  Lane testified that, as he was pulling the driver out of the car, he saw a bag of marijuana on the door ledge of the driver's-side door.  Skinner testified that as he was removing Lewis from the car, he saw two firearms pushed partway under the front-passenger seat.

The officers asked the driver for his consent to search the vehicle.  He was initially hesitant, but the officers testified he eventually provided consent.  SCPD officers failed to obtain a signed consent-to-search form.

Officers searched the car.  There is no BWC footage of the search, but the officers did take some pictures, albeit blurry.  The search revealed the previously noted marijuana and firearms, as well as drugs and drug paraphernalia in the center console.

SCPD officers took Lewis to the SCPD headquarters, where RCSD officers evidently arrived and served the warrant.

A grand jury thereafter indicted Lewis of felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and (e).  Lewis filed this motion to suppress, to which the government responded.  The Court subsequently held a hearing.  At the hearing, the government called Lane, Skinner, and Wilson as witnesses.  Lewis declined to call any witnesses.

After hearing the testimony of the witnesses and argument from the government and Lewis, the Court took the matter under advisement.  The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III.    LEGAL STANDARD

#### A.    *Fifth Amendment*

The Fifth Amendment to the United States Constitution provides, in relevant part, that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law."  U.S. Const. Amend. V.  Courts must examine procedural due process questions in two steps.  *Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993).  First, they must determine "whether there exists a liberty or property interest which has been interfered with by the state."  *Id*.  Second, they must "inquire[] whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Id.* (citations omitted).

In certain specific instances, a state statute may give rise to a liberty interest and the corresponding due process protections.  This occurs when the statute "plac[es] substantive limitations on official discretion."  *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).  But, in cases where a due process violation is based off police failure to preserve or document potentially useful evidence, a defendant must "show bad faith on the part of the police."  *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (explaining this requirement "both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it").

#### B.    *Fourth Amendment*

The Fourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. Amend. IV.

4

### 1.    Seizure

Passengers in cars stopped by police are deemed seized for Fourth Amendment purposes and are entitled to challenge the constitutionality of the detention. *Brendlin v. California*, 551 U.S. 249, 251 (2007); *see also United States v. Jones*, 678 F.3d 293, 301 (4th Cir. 2012) (holding car blocked by police after it parked in apartment parking lot seized for Fourth Amendment purposes).

The Court must suppress evidence seized as a result of an unconstitutional seizure. *See Brendlin*, 551 U.S. at 251 (remanding state supreme court decision that denied suppression of evidence because it incorrectly determined defendant-passenger had not been seized for Fourth Amendment purposes during a stop).

To stop someone, even for investigatory purposes, an officer must possess "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "If police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony," then they may stop that person "to investigate that suspicion." *United States v. Hensley*, 469 U.S. 221, 229, 235 (1985) (finding brief, investigatory stop of defendant in objective reliance on another police department's "wanted flyer" was justified where flyer was issued based on reasonable, articulatable suspicion that the person committed the offense).

The Court looks at the "totality of the circumstances" to determine whether officers had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Bernard*, 927 F.3d 799, 805 (4th Cir. 2019) (internal quotation marks omitted). Both the "quantity and quality" of the information possessed by the police must be considered. *See Alabama v. White*, 496 U.S. 325, 330 (1990) ("[I]f a tip has a relatively low degree of reliability, more information

will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.").

### 2.    *Search*

Absent an exception, a search or seizure must be authorized by a warrant. *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015).  A defendant, however, lacks standing to challenge a search of an automobile when he lacked a reasonable expectation of privacy in the vehicle.  *United States v. Smith*, 21 F.4th 122, 130 (4th Cir. 2021).

As relevant here, seizure of evidence in plain view is an exception to the warrant requirement.  *Cady v. Dombrowski*, 413 U.S. 433, 445 (1973) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.").  The government must show an exception applies by a preponderance of the evidence.  *United States v. Matlock*, 415 U.S. 164, 177 (1974).

## IV.    DISCUSSION AND ANALYSIS

### A.    *Whether the Court should suppress the evidence because the first officers on the scene failed to activate their BWCs*

Lewis argues the Court should suppress the evidence because the first officers on the scene failed to activate their BWCs, nor did the officers who supposedly saw the evidence in plain view. The government responds that it has no duty to create evidence, and even if there is a duty, defendant has failed to show the requisite bad faith.

Lewis asserts more than a generalized duty for the government to create evidence.  Instead, he insists South Carolina has created a liberty interest in BWC footage.  South Carolina law requires all state and local law enforcement agencies to "implement the use of body-worn cameras pursuant to guidelines established by the Law Enforcement Training Council."  S.C. Code Ann.

§ 23-1-240(B). It also directs state and local law enforcement agencies to "develop policies and procedures for the use of body-worn cameras" under those guidelines. *Id.* § 23-1-240(D).

Thus, although the statute mandates the use of BWCs and the implementation of guidelines for such use, the specific provisions of such guidelines are largely left to the discretion of each law enforcement agency. For the sake of discussion, however, the Court assumes, without deciding, the statute "plac[es] substantive limitations on official discretion" sufficient to create a liberty interest. *See Olim*, 461 U.S. at 249 (explaining that "particularized standards or criteria [must] guide the State's decisionmakers." (internal quotation marks omitted)).

The Court agrees with Lewis that the witness-officers in this case violated the SCPD General Order: 245 Body Worn Camera policy (the Policy) by failing to activate their BWCs. The Policy requires all "officers who have a reasonable expectation that they will answer a call for service, initiate[] any other law enforcement or investigative encounter between an officer and a member of the public" to use a BWC. The Policy at 245-2. It states that officers "must activate" their BWCs in specified circumstances, including for traffic stops, suspicious persons or vehicles, investigative contacts, arrests, and calls involving weapons or violence. *Id.* at 245-3.

At the very least, the incident at issue was a call involving a weapon, because the stop was based off Lewis's alleged recent use of a firearm. Several other of the enumerated circumstances appear to also apply. Several officers testified at the hearing that the practice is to wait for an order from a superior before activating their BWCs. Such a procedure makes little practical sense and, more importantly, is disallowed under the Policy.

Nevertheless, the Court declines to impute bad faith by the officers at the time of the stop. Although the officers' refusal to recognize their conduct violated the Policy appears somewhat disingenuous, they testified their failure to activate was an oversight due to their lack of experience

7

wearing the BWCs.  Even if bad police conduct, such unintentional malpractice fails to rise to the level of bad faith required for a due process violation.  *See Youngblood*, 488 U.S. at 58 (reasoning courts should find a due process violation only in "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.").

The Court thus declines to suppress the evidence based on Lewis's due process arguments. Going forward, however, the Court may well find a failure to abide by a BWC policy to be in bad faith.

> **B.      Whether the Court should suppress the evidence because SCPD officers purportedly lacked authority to stop the vehicle and detain Lewis**

Lewis argues SCPD officers unconstitutionally seized him because they had no reliable basis to believe that Lewis was in the car and because they lacked authority to serve the Richland County arrest warrant without the endorsement of a Sumter County Magistrate Judge. The government responds SCPD officers had corroboration to indicate Lewis was in the vehicle and endorsement of the warrant was unrequired under the circumstances.

Even though the officers told Lewis at the time of the stop that there was a warrant for his arrest, the Sumter officers did not possess the warrant and thus failed to show it to him.  They instead relied on the information given to them by RCSD, the information in the NCIC, and the information from the phone calls made by the Alleged Victim's family members.

When SCPD officers surrounded the car, RCSD had told SCPD Lewis had been involved in shooting that morning, for which a warrant had been issued. They had information from RCSD indicating Lewis was headed toward Sumter, and information from purported relatives of the Alleged Victim of an exact address where the car was headed.  The Alleged Victim's family had also told them that she and Lewis were traveling in a red sedan.  Although SCPD officers failed to

follow the red car to verify the route it took aligned with the information given by the family, officers saw three occupants before they made contact.

Thus, not only did SCPD officers have a reliable basis to believe that Lewis had committed a crime, they also had a reliable basis to believe it was Lewis in the car.  *See United States v. Holmes*, 376 F.3d 270, 276 n.2 (4th Cir. 2004) (reasoning police had properly stopped suspects when a vehicle fitting the description of the suspects' car arrived at an apartment where a confidential informant had told police the suspects had gone).

Accordingly, the Court determines, under the totality of the circumstances, there was not a Fourth Amendment violation inasmuch as SCPD officers had a reasonable, articulable suspicion to stop the vehicle and seize Lewis, even without serving the Richland County arrest warrant.  *See Riley v. California*, 573 U.S. 373, 381 (2014) (explaining that "the ultimate touchstone of the Fourth Amendment is reasonableness." (internal quotation omitted)).  As such, the Court need not address under what circumstances South Carolina law requires endorsement of the warrant by a local magistrate judge.

Further, to the extent Lewis challenges the procedure by which Sumter officers stopped the car, the Court rejects those arguments as well.  Lewis was suspected of recently committing a violent crime that involved his use of a firearm.  The officers thus reasonably drew their guns and ordered Lewis and the driver to exit the vehicle.  *See Holmes*, 376 F.3d at 276 n.2 (reasoning use of the felony stop procedure was reasonable when vehicle's occupants were suspected of involvement in a series of armed robberies and officers had reason to believe they had weapons in the vehicle).

The Court thus also declines to suppress on this ground.

        ***C.***       ***Whether the Court should suppress the evidence because the officers allegedly lacked a search warrant or probable cause to search the vehicle***

Lewis contends SCPD officers unlawfully searched the vehicle because they lacked a search warrant. The government counters that several exceptions to the warrant requirement applied. At the hearing, it also argued that Lewis had no standing to challenge the search because he had no legitimate expectation of privacy in the vehicle.

The Court addresses the threshold issue of standing first. The Fourth Circuit directs courts to look at factors such as ownership of the vehicle, legitimate presence in the vehicle, and claimed ownership over the seized evidence when determining whether a person had a legitimate expectation of privacy in a vehicle. *Smith*, 21 F.4th at 130.

Here, although Lewis had permission to be in the car and, presumably, owned or possessed the guns in question, he neither owned nor operated the vehicle on the day in question. There were two other people in the car with him. Considering these factors together, the Court holds Lewis had no legitimate expectation of privacy in the vehicle and has no standing to challenge the search.

Even if he did have a legitimate expectation of privacy, however, the plain view exception also applies here, because both the firearms and marijuana were observed by officers in plain view. *See United States v. Chulengarian*, 538 F.2d 553, 554 (4th Cir. 1976) (holding the plain view exception allowed police to search the vehicle when an officer saw marijuana, a marijuana cigarette, and a smoking pipe through an open car door after a suspect's removal from the vehicle).

The Court thus declines to suppress the evidence on this ground, as well. It need not address whether any other exceptions to the warrant requirement applied in this case. *See Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court

Lewis's motion to suppress, ECF No. 49, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 11th day of July 2022, in Columbia, South Carolina.

<u>s/ Mary Geiger Lewis</u>
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE